## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF LOUISIANA
## LAKE CHARLES DIVISION

**STEPHEN J KATZ**                                   **CASE NO.  2:21-CV-00132**

**VERSUS**                                                   **JUDGE TERRY A. DOUGHTY**

**RYAN D MCCARTHY**                           **MAGISTRATE JUDGE KAY**

### MEMORANDUM RULING

Pending before the Court is Defendant Christine Wormuth's ("Wormuth"), in her official capacity as the Secretary of the Army and on behalf of Defendant Ryan McCarthy, Motion for Summary Judgment [Doc. No. 15]. Plaintiff Dr. Stephen J. Katz ("Dr. Katz") has filed a Response in Opposition [Doc. No. 37] to the Motion. Wormuth has filed a Reply [Doc. No. 46] to the Opposition.

For the reasons set forth herein, the Motion is **GRANTED**.

### I.       BACKGROUND AND PROCEDURAL HISTORY

Dr. Katz is a former civilian surgeon at Bayne-Jones Army Community Hospital ("BJACH").[1]  He was employed as a General Surgeon at BJACH from April 2016 until his resignation on January 2, 2019.[2] He served as the Chief of Surgery and Chief of Surgical Services from October 1, 2016, until August 1, 2018, when the position was converted from a civilian position to a military position.[3] At that time, there were three civilian general surgeons at BJACH: Dr. Katz (a contractor), Dr. Isaiah, and Dr. Nina Hall. Dr. Katz and Dr. Isaiah are close to the same age.[4]

---

[1] [Doc. Nos. 1, 15, 37]
[2] [Id.]
[3] [Doc. No. 15]
[4] [Id.]

From July 15-22, 2016, the Army posted a vacancy announcement for a civilian Supervisory Physician (General Surgery) at BJACH.[5] Dr. Isaiah, Dr. Hall, and Dr. Katz all applied for the supervisory position.[6] On August 31, 2016, Dr. Katz received a tentative job offer for the Supervisory Physician position; he accepted the job offer and negotiated a salary of $339,999.00, eight hours annual leave accrual, and a 7% ($23,800) recruitment incentive.[7]

In March 2018, Lieutenant Colonel ("LTC") Heather Owens became the interim Deputy Commander of Surgical Services ("DCSS") and Dr. Katz's first level supervisor after the previous DCSS retired. At that time, Colonel ("COL") Marla Ferguson, BJACH Commander, was his second level supervisor, and LTC Brian Adams was the Chief Medical Officer ("CMO") and not in Dr. Katz's chain of command.[8] As CMO, LTC Adams was the senior physician advisor to the Hospital Commander and part of the Command Group at Fort Polk.[9]

On July 16, 2018, Defendant asserts that LTC Owens issued Dr. Katz a written counseling for failure to observe written procedures.[10] On June 7, 2016, at 3:00 P.M., LTC Owens was notified that Dr. Katz intended to take leave the following day, and he had not requested leave in the automated leave system as required.[11] Dr. Katz was supposed to be on call that day. LTC Owens issued the counseling to document the incident in writing as it was patient abandonment and to put Dr. Katz on notice that it would be in his best interest to change the behavior.[12] Dr. Katz did not receive any adverse action as a result of the counseling.

---

[5] [Doc. Nos. 15, 37]
[6] [Id.]
[7] [Doc. No. 15, p. 11]
[8] [Id.]
[9] [Id.]
[10] [Doc. No. 15]
[11] [Id.]
[12] [Id.]

On July 24, 2018, while exiting the library, Major ("MAJ") Brian Bolton, Assistant to the Deputy Commander of Nursing at BJACH, heard someone saying, "HELP, HELP, HELP ME!" He walked toward the yelling to investigate and saw Jack Reed, the Healthcare Training Instructor, conducting a class and there was no emergency.[13] When MAJ Bolton saw Dr. Katz exerting himself, he asked the instructor about the risk assessment for senior citizens. Dr. Katz never brought the comment up to MAJ Bolton or MAJ Bolton's supervisory chain prior to his October 2018, Equal Employment Opportunity ("EEO") complaint. MAJ Bolton testified that he would have immediately apologized and tried to rectify the situation had he known he offended Dr. Katz. COL Ferguson, LTC Adams, and LTC Owens were not involved in this incident. [14]

In May 2014, the Surgeon General/Commanding General ("CG") of the U.S. Army Medical Command ("MEDCOM") conducted an executive leadership organization working group that revised the medical treatment facility structure into a format known as HELOS.[15] The HELOS restructuring created a strain on small medical facilities because there were more administrative positions than a small hospital like BJACH could staff. Additionally, no extra personnel were provided. On July 5, 2017, the Army published the HELOS Reset Directive, directing that the structure at all medical treatment facilities, including at BJACH, revert from the eight deputy commander HELOS structure back down to the original four.[16]

LTC Adams recommended to COL Ferguson that MAJ Caton Simoni assume the Chief of Surgery duties with the HELOS reset.[17] He made the recommendation because MAJ Simoni was "a senior military leader who needed professional development and grooming for higher levels of

---

[13] [Id., p. 12]
[14] [Id.]
[15] [Doc. Nos. 15, 37]
[16] [Doc. No. 15]
[17] [Id.]

leadership, and that's the way [military officers] get it, by being in those positions," which is why the Defendant preferred to have military officers and not civilians in hospital department level positions.[18] He believed the change was the best course of action for BJACH. COL Ferguson agreed.

In the summer of 2018, MAJ Simoni arrived from Blanchfield Army Community Hospital at Fort Campbell where she had been one of the senior Obstetricians and Gynecologists. She was relatively new to BJACH. She was also a senior Major and an experienced surgeon. Lastly, she had deployment and leadership experiences as a Flight Surgeon with a Combat Aviation Brigade.[19]

On August 1, 2018, BJACH leadership converted Dr. Katz's Chief of Surgery and Chief of Surgical Services position, the only civilian supervisory position at BJACH, to a military officer position as part of the implementation of an Army wide hospital reorganization structure.[20] Dr. Katz received no loss in pay as a result of the conversion. Shortly thereafter, the clinical privileges of Dr. Katz and Dr. Isaac Isaiah, a fellow surgeon at BJACH, were placed in abeyance while the Defendant conducted an investigation into reported allegations and concerns.[21] Again, Dr. Katz did not suffer any loss of pay during the investigation.

In this lawsuit, Dr. Katz alleges that he was given a written counseling for failure to observe written procedures, that his supervisory duties were removed, and that his clinical privileges were placed in abeyance because of his age (77 at the time).[22]  He also alleges reprisal and a hostile work environment ("HWE") based on his age in violation of the Age Discrimination in Employment Act of 1967 ("ADEA"), 29 U.S.C. § 621 et seq., and Title VII of the Civil Rights

---

[18] [Id., p. 13].
[19] [Id.]
[20] [Doc. Nos. 1, 15, 37]
[21] [Id.]
[22] [Doc. Nos. 1, 37]

Act of 1964 ("Title VII"), 42 U.S.C. § 2000e, et seq.[23] Dr. Katz also alleges the Defendant discriminated against him because of his religion by the "overtly devout Christian presence" at BJACH.[24]

Dr. Katz identifies as Jewish.[25] He argues that BJACH does not observe the National Day of Remembrance for the Holocaust but does not know when the National Day of Remembrance is.[26] Dr. Katz testified during his deposition that BJACH was not Anti-Semitic, but that Judaism was ignored.[27] Dr. Katz never discussed his religious beliefs with the "military establishment."[28] COL Ferguson, LTC Adams, and LTC Owens were not aware of Dr. Katz's religion until they were notified of his EEO complaint in November 2018.[29] The hospital chaplain delivered messages during morning meetings that were allegedly secular. Defendant claims that the Chaplain did not engage in delivering sermons and never tried to proselytize during these meetings.[30]

On October 16, 2018, Dr. Katz initiated EEO contact and, on December 28, 2018, filed a Formal Complaint of Discrimination.[31] Dr. Katz alleged in the EEO complaint that he was subjected to discrimination because of his race, age, national origin (Jewish), and religion (Jewish) when MAJ Bolton asked the training instructor for the risk assessment for senior citizens while looking at Dr. Katz, he was replaced as Chief of Surgery, and his clinical privileges were placed in abeyance, creating a hostile work environment.[32] He further alleged BJACH permeated a pro-

---

[23] [Doc. No. 1]
[24] [Doc. No. 1]
[25] [Doc. No. 15-4]
[26] [Id.]
[27] [Id.]
[28] [Id., p. 8]
[29] [Doc. No. 15]
[30] [Id.]
[31] [Doc. No. 15-20, EEO Complaint]
[32] [Id.]

Christian, anti-Semitic environment which supported Dr. Isaiah, a Christian theologian.[33] He brings these same claims to this Court in his Complaint.[34]

The issues are briefed, and the Court is prepared to rule.

## II.    LAW AND ANALYSIS

### A.  Summary Judgment Standard

Summary judgment is appropriate when the evidence before a court shows, "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a).  A fact is "material" if proof of its existence or nonexistence would affect the outcome of the lawsuit under applicable law in the case.  *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986).  A dispute about a material fact is "genuine" if the evidence is such that a reasonable fact finder could render a verdict for the nonmoving party.  *Id.*

"[A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (quoting *Anderson*, 477 U.S. at 247).  "The moving party may meet its burden to demonstrate the absence of a genuine issue of material fact by pointing out that the record contains no support for the non-moving party's claim."  *Stahl v. Novartis Pharm. Corp.,* 283 F.3d 254, 263 (5th Cir. 2002).  Thereafter, if the non-movant is unable to identify anything in the record to support its claim, summary judgment is appropriate.  *Id.*  "The court need consider only the cited materials, but it may consider other materials in the record." FED. R. CIV. P. 56(c)(3).

---

[33] [Id.]
[34] [Doc. No. 1]

In evaluating a motion for summary judgment, courts "may not make credibility determinations or weigh the evidence" and "must resolve all ambiguities and draw all permissible inferences in favor of the non-moving party." *Total E & P USA Inc. v. Kerr–McGee Oil and Gas Corp.*, 719 F.3d 424, 434 (5th Cir. 2013) (citations omitted). While courts will "resolve factual controversies in favor of the nonmoving party," an actual controversy exists only "when both parties have submitted evidence of contradictory facts." *Little v. Liquid Air. Corp.,* 37 F.3d 1069, 1075 (5th Cir. 1994). To rebut a properly supported motion for summary judgment, the opposing party must show, with "significant probative evidence," that a genuine issue of material fact exists. *Hamilton v. Segue Software, Inc*., 232 F.3d 473, 477 (5th Cir. 2000) (emphasis added). "'If the evidence is merely colorable, or is not significantly probative,' summary judgment is appropriate." *Cutting Underwater Tech. USA, Inc. v. Eni U.S. Operating Co*., 671 F.3d 512, 517 (5th Cir. 2012) (quoting *Anderson,* 477 U.S. at 248).

Relatedly, there can be no genuine dispute as to a material fact when a party fails "to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp.,* 477 U.S. at 322-23. This is true "since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Id*. at 323.

Challenges to agency decisions are normally resolved on motions for summary judgment. *Berry v. Esper*, 322 F. Supp. 3d 88, 90 (D.D.C. 2018).

## B.  Analysis

Defendant asserts in her reply[35] to Dr. Katz's opposition that Dr. Katz abandoned his claims related to the written counseling and Bolton statement.[36] Further, Defendant asserts that Katz does

---

[35] [Doc. No. 46]
[36] [Doc. 32-2, p.15, n.2]

not oppose dismissal of his religious discrimination claim.[37] Consequently, the only remaining claims before the Court are that the Army removed Dr. Katz's supervisory duties because of his age and retaliated against him by placing his clinical privileges in abeyance, converting his abeyance to a summary suspension, and delaying resolution of the investigation, thereby creating a HWE that resulted in constructive discharge.

After reviewing the pleadings, the Court agrees with Defendant's assertion. Accordingly, the Court will analyze whether Dr. Katz's claim was timely made, Dr. Katz's claims of retaliation/constructive discharge, discrimination under the ADEA and Tile VII, and retaliation under the ADEA and Title VII.

### 1. Analysis-Whether Dr. Katz Timely Exhausted his Administrative Remedies

Defendant asserts in her Motion that Dr. Katz's claims as they relate to the written counseling, removal of the supervisory duties, and clinical abeyance are barred as untimely. Dr. Katz responds that Defendant waived her right to contest the timeliness of his claims pertaining to his removal from chief of surgery/chief of surgical services and placement of clinical privileges in abeyance. He also alternatively argues that the continuing violation doctrine applies, making his claim timely.

Exhaustion of available remedies is required "before a federal employee may bring an employment-discrimination suit in federal court[.]" *Yee v. Baldwin-Price*, 325 Fed. Appx. 375, at 378 (5th Cir. 2009); *see also Hampton v. IRS*, 913 F.2d 180, 182 (5th Cir.1990). As an initial step in the exhaustion process, the employee must "initiate contact with [an EEO] Counselor within 45 days of the date of the matter alleged to be discriminatory[.]" 29 C.F.R. § 1614.105(a)(1). "Failure to notify the EEO counselor in [a] timely fashion may bar" the employee's claim. *Pacheco v. Rice*,

---

[37] [Id. at p.21, n.7]

8

966 F.2d 904, 905 (5th Cir.1992). The exhaustion requirement is not jurisdictional, however, and is subject to the traditional equitable defenses of waiver, estoppel, and equitable tolling. *Id.* at 906. If informal counseling is not timely sought, "the plaintiff has the burden of demonstrating a factual basis to toll the period." *Blumberg v. HCA Mgmt. Co.*, 848 F.2d 642, 644 (5th Cir.1988).

Dr. Katz argues that Defendant waived the 45-day time limit by accepting the complaint, fully investigating it, issuing a report of investigation ("ROI"), and participating in the administrative law hearing process on the claims. In defense of this, Defendant argues that investigating an EEO complaint and participating in an administrative process does not waive timeliness arguments. Defendant further asserts that the Department of Defense, not the Army, prepares and issues the ROI.

In support of his argument, Dr. Katz relies on the ruling in *Moncus v. Johanns*, 2006 WL 163309 (M.D. Ala. Jan. 20, 2006). In *Moncus*, the court discussed the substantive changes made to the federal regulations governing the timeliness and dismissal of EEO complaints, and it found that the defendant waived its objection to the plaintiff's untimely initial contact because it failed to dismiss plaintiff's formal complaint prior to plaintiff's request for an administrative hearing.

Defendant argues that Dr. Katz's reliance on this case does not create a triable issue because the cases are not comparable. Defendant asserts that in *Moncus*, the agency knew that the entire complaint was untimely before the plaintiff requested a hearing but failed to dismiss the complaint as untimely prior to the hearing request. The district court concluded that the agency waived its timeliness defense because dismissal of a complaint in its entirety, §1614.107(a), requires that the dismissal occur before a request for a hearing. *Id*. Accordingly, Defendant maintains that the *Moncus* finding is not applicable to the instant case because Plaintiff's entire EEO complaint was not untimely and, therefore, fell under § 1614.107(b), not § 1614.107(a). *See Lord v. Holder*, 568

Fed. Appx. 435, 438 n.1 (6th Cir. 2014) (distinguishing *Moncus* because entire EEO complaint not due to be dismissed and holding that the agency did not waive its timeliness argument).

The Court agrees with Defendant and finds that she did not waive the time limit. In *Rowe v. Sullivan*, 967 F.2d 186 (5th Cir. 1992), the court held that in order to waive a timeliness objection, the agency must make a specific finding that the claimant's submission was timely made. No such finding was made in this case.

As an alternative argument, Dr. Katz asserts that the placement of his clinical privileges in abeyance claim is timely pursuant to the continuing violation doctrine. Specifically, he asserts that the continuing violation doctrine tolled his time for contacting the EEO office about the abeyance of his clinical privileges because the subsequent automatic conversion to a summary suspension occurred within 45-days of his EEO contact. The continuing violation doctrine permits the tolling of the statutory limitation in a discrimination case when the violation is deemed ongoing. *Messer v. Meno*, 130 F.3d 130, 134-35 (5th Cir. 1997).

Defendant argues that the doctrine does not apply to the removal of Dr. Katz's supervisory duties or his clinical abeyance because they are both discrete acts and must be timely exhausted to be actionable. Plaintiff even acknowledged in his own pleading "that his removal from Chief of Surgery/Surgical Services is a discrete act that is not subject to the continuing violation doctrine."[38] Dr. Katz maintains that his placement of clinical privileges in abeyance that automatically converted into a summary suspension of privileges is a continuing violation. The Court disagrees.

Dr. Katz has not met his burden of proof that the continuing violation doctrine applies. The Court finds that the abeyance of his clinical privileges was a discrete act, and Dr. Katz did not timely exhaust this to make it actionable. Furthermore, summary suspension is automatic and not

---

[38] [Doc. No. 32-2, p. 6]

a separate act committed by Defendant. Accordingly, the continuing violation doctrine is not a proper avenue for Dr. Katz to equitably toll his failure to timely exhaust his claims. There is no genuine dispute as to any material fact, and Defendant is entitled to judgment as a matter of law as it relates to Dr. Katz failure to timely exhaust his administrative remedies.

Although the Court finds for Defendant, it will analyze the remainder of Dr. Katz's claims.

### 2.   Analysis- Retaliation/Constructive Discharge Claims

Dr. Katz argues that his retaliation/constructive discharge claims are properly before the Court. Defendant argues that these claims are not properly before the Court because Dr. Katz did not exhaust his retaliation claims as they relate to his abeyance/summary suspension.

In support of his argument, Dr. Katz cites to *Gupta v. East Texas State University*, 654 F.2d 411, at 414 (5th Cir.1981), wherein the United States Court of Appeals for the Fifth Circuit held "it is unnecessary for a plaintiff to exhaust administrative remedies prior to urging a retaliation claim growing out of an earlier charge; the [] court has ancillary jurisdiction to hear such a claim when it grows out of an administrative charge that is properly before the court." However, the Fifth Circuit's holding in this case centered on Equal Employment Opportunity Commission charges, not EEO complaints. Dr. Katz argues that the *Gupta* ruling applies equally to EEO complaints. *See e.g., Van Allen v. Jackson*, No. CV G-07-321, 2009 WL 10736913 (S.D. Tex. Sept. 25, 2009); *King v. Napolitano*, No. 3:08-CV-2014-O, 2010 WL 11618677 (N.D. Tex. May 21, 2010); *Baig v. Nicholson*, No. CV H-06-4121, 2008 WL 11499303 (S.D. Tex. Feb. 5, 2008) (finding that the plaintiff could proceed with his retaliation claim notwithstanding the fact that his retaliation claim has never been the subject of an EEO complaint); *Phongsavane v. Potter*, No. CIVASA05CA0219-XR, 2005 WL 1514091 (W.D. Tex. June 24, 2005). Dr. Katz initiated contact with the EEO on October 16, 2018, and he alleges that his clinical privileges were retaliatorily

11

held in abeyance/summary suspension and that he was constructively discharged for his involvement with the EEO. This, he asserts, is properly before the Court under *Gupta*.

Defendant argues that at the time Plaintiff initiated EEO contact, his clinical privileges had already been placed in abeyance and the abeyance had automatically converted to a summary suspension. However, Defendant states that Dr. Katz did not allege that reprisal was a basis for the actions.[39] Instead, he alleged that the actions were motivated by his age, race, national origin, and religion.[40] Defendant maintains that Dr. Katz was required to exhaust all claims that accrued prior to his initial EEO contact, particularly as to the fact that Dr. Katz included the alleged adverse actions in his formal EEO complaint but did not check the box for reprisal. *Gupta*, 654 F.2d 411, 414; *Williams v. AT&T, Inc.,* 356 F. App'x 761, 766 (5th Cir. 2009); *Eberle v. Gonzales*, 240 F. App'x 622, 628 (5th Cir. 2007). Ultimately, Defendant asserts that Dr. Katz's retaliation claims related to the clinical abeyance and summary suspension are barred because he did not timely exhaust his administrative remedies as to these claims.

The Court agrees. Dr. Katz's self-serving analysis of the *Gupta* holding does not satisfy his burden of proving that these claims are properly before this Court. Defendant is proper in her argument that Dr. Katz did not timely exhaust his administrative remedies because of his failure to check the box for reprisal in his EEO complaint, which went against the requirement for him to exhaust all claims that accrued prior to his initial EEO contact. Accordingly, the Court finds that there is no genuine dispute as to any material fact, and Defendant is entitled to judgment as a matter of law as it relates to Dr. Katz's claims for retaliation/constructive discharge on his abeyance and summary suspension.

---

[39] [Doc. No. 15-20]
[40] [Id.]

### 3.   Analysis- Title VII Discrimination Under the ADEA

Dr. Katz brings a claim for age discrimination and retaliation under Title VII of the Civil Rights Act of 1964. Title VII prohibits employers from discriminating against employees on a number of grounds, including age. 42 U.S.C.§ 2000.   Under the ADEA, it is unlawful for an employer "to fail or refuse to hire or to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age." 29 U.S.C. § 623(a)(1). The ADEA likewise prohibits retaliation against an employee "because the employee has opposed allegedly discriminatory practices by the employer or participated in a proceeding, charge or hearing where such practices are challenged," which can be "opposition" or "participation" activities. 29 U.S.C. § 623(d); *Rogers v. City of Baton Rouge*, 2016 WL 4035328, (M.D. La. Jul. 25, 2016) (quoting *De Anda v. St. Joseph Hospital*, 671 F.2d 850, 851 n.1 (5th Cir. 1982)). While Title VII and the ADEA protect different traits, disparate treatment claims and retaliation claims under either Act typically utilize the *McDonnell Douglas* burden-shifting proof structure established by the Supreme Court. *See McDonnell Douglas, Corp. v. Green*, 411 U.S. 792, 802-03 (1973).

The Fifth Circuit employs the familiar *McDonnell Douglas* burden-shifting framework where the ADEA claim is based on circumstantial evidence. *Patrick v. Ridge,* 394 F. 3d 311, 315 (5th Cir. 2004) (citing *McDonnell Douglas*, 411 U.S. 792). Under this framework, the employee must first prove a *prima facie* case, which creates a rebuttable presumption that the employer unlawfully [retaliated] against the employee. *Id.* (*citing McDonnell Douglas,* 411 U.S. at 802; *Tex. Dep't of Cmty. Affairs v. Burdine,* 450 U.S. 248, 255 (1981)). To rebut the presumption, the employer must articulate a legitimate, nondiscriminatory reason for its decision; however, at that stage, it need not prove that it was actually motivated by its proffered reason. *Id.* (citing *Burdine,*

450 U.S. at 255). If the employer meets its production burden, the employee must show that the employer's legitimate, nondiscriminatory reason was not its real reason but was merely a pretext for discrimination. *Id.* (*citing McDonnell Douglas,* 411 U.S. at 804). In other words, after a defendant employer has met its burden of production, an employee plaintiff, like any other civil plaintiff, must now demonstrate that there is a material issue of disputed fact as to discrimination [or retaliation], the ultimate question *vel non*. *Id.* at 15-16 (citing *Long v. Eastfield College,* 88 F. 3d 300, 308 (5th Cir. 1996)).

### i. *Prima Facie* Case of Discrimination

Defendant asserts that Dr. Katz cannot establish a *prima facie* case for age discrimination. Where, as here, an age discrimination claim relies on circumstantial evidence, the plaintiff has the initial burden to establish a *prima facie* case of discrimination. To meet this burden, Dr. Katz must establish several factors. Defendant and Dr. Katz both assert conflicting analyses for how the Court should arrive at the conclusion of whether Dr. Katz has met his *prima facie* burden. Defendant asserts that he must show:

> (1) he was discharged; (2) he was qualified for the position; (3) he was within the protected class at the time of discharge; and (4) he was either i) replaced by someone outside the protected class, ii) replaced by someone younger, or iii) otherwise discharged because of his age.

*Kim v. Hospira, Inc.*, 709 F. App'x 287, 289 (5th Cir. 2018). Dr. Katz may show that he was "otherwise discharged because of his age" by establishing that a comparable employee benefited from disparate treatment under "nearly identical" circumstances—that is, the two employees "held the same job or responsibilities, shared the same supervisor ... and have essentially comparable violation histories." *Id*. at 289.

Dr. Katz asserts that under the federal-sector portion of the ADEA, he must show:

> (1) he was within the protected class (a government employee age 40 or over) at the time; (2) he was qualified for the position; (3) he suffered an adverse employment decision; and (4) he was replaced by a younger employee or treated less favorably than similarly situated younger employees.

*Leal v. McHugh*, 731 F.3d 572, at 410-11 (5th Cir. 2003). The Court agrees that as an employee of the federal sector, the proper showing for a *prima facie* case is the one asserted by Dr. Katz. It is uncontroverted that Dr. Katz was (1) within the protected class at the time of the action and (3) that he suffered an adverse employment action. The Court will therefore analyze whether (2) Dr. Katz was qualified for the position, and (4) whether he was replaced by a younger employee or treated less favorably than similarly situated younger employees.

### (2) Qualified for the Position

Defendant asserts that Dr. Katz cannot prove he was qualified for the position because the Chief of Surgery/Surgical Services position could only be filled by military personnel. Therefore, because Dr. Katz was a civilian at all pertinent times to this suit, he no longer qualified for the position.

Dr. Katz argues that Defendant does not offer a single legal argument or shred of evidence to support this, which he asserts creates a genuine issue of material fact for trial.

The Court agrees with Dr. Katz's assertion. Defendant has produced evidence showing that the Chief of Surgery and Chief of Surgical Services position was converted into a military officer position on August 1, 2018, as part of the implementation of an Army-wide hospital reorganization structure. However, Defendant later asserted that this restructuring was done at the will of Defendant.

The Court finds that Dr. Katz has established that there is a genuine issue of material fact as to whether he was qualified for the position.

### (4) Whether Dr. Katz was replaced by a younger employee or treated less favorably than similarly situated younger employees

The Court finds that there is no contested issue of fact that Dr. Katz was replaced by someone younger than him for the position. Therefore, he has satisfied the fourth prong of the *prima facie* analysis.

In conclusion, the Court finds that Dr. Katz has met his burden of proving a *prima facie* case of discrimination under the ADEA and Title VII.

### ii.    Legitimate, Nondiscriminatory Reason for Termination

Because Dr. Katz has established a *prima facie* case for discrimination, Defendant must now provide legitimate, nondiscriminatory reasons for termination. Defendant argues that even if Dr. Katz were to meet his burden of establishing a *prima facie* case of discrimination, Defendant has proffered legitimate reasons for removing Plaintiff's supervisory duties.

Specifically, Defendant asserts that there were fewer leadership positions and LTC Adams, with COL Ferguson's approval, determined that it was in the Defendant's best interest to convert the Chief of Surgery and Chief of Surgical Services duties from a civilian to a military position. Defendant converted the Chief of Surgery position to a military officer and removed the supervisory duties from Dr. Katz because the HELOS reorganization reduced the number of supervisory positions available to develop military officers, the Chief of Surgical Services was the only supervisory position with a civilian chief, and MAJ Simoni was the senior physician in surgical services.

LTC Adams' explanations have been consistent. LTC Adams has testified that his decision to permanently convert the Chief of Surgery position to a military position was not because of any misconduct by Dr. Katz. Although the HELOS reset did not require LTC Adams to remove Dr. Katz from the supervisory position, the HELOS mandated reorganization reduced the number of

16

department heads from 7 to 4. LTC Adams determined that it was in BJACH's best interest to have military in the reduced leadership roles to provide career development opportunities for the young officers. Plaintiff argues that COL Ferguson and LTC Adams' use of the term "young" officers shows that age was a motivating factor.[41] However, the term young referred to the officer's career development, not their age.

The supervisory position was not a promotion for MAJ Simoni as she did not receive an increase in rank or additional compensation. Moreover, LTC Adams consulted with human resources and the Fort Polk legal office regarding the conversion, and Dr. Katz remained under the same position description until he resigned with no loss in pay.

The Court finds that Defendant has, at the very least, clearly articulated a legitimate, nondiscriminatory reason for removing Dr. Katz's supervisory role. Therefore, any "inference of discrimination disappears." *Davis v. Dallas Area Rapid Transit*, 383 F.3d 309, 319 (5th Cir. 2004). Further, at this point, Dr. Katz bears the ultimate burden to show Defendant's reason for removing his supervisory role was for age discrimination. *See McCoy v. City of Shreveport*, 492 F.3d 551, 557 (5th Cir. 2007). To do so, Dr. Katz must "show something beyond disagreement with the employer's decision." *Wilson v. New Wendy's, Inc.,* No. 3:18-CV-01049, 2019 WL 6247823, at *4, 6 (W.D. La. 11/20/19) (*citing Bryant v. Compass Grp. USA Inc.*, 413 F.3d 471, 478 (5th Cir. 2005)).

### iii.   Pretext

A plaintiff can establish pretext by either evidence of disparate treatment or by showing "the employer's proffered explanation is false or 'unworthy of credence.'" *Thomas v. Johnson*, 788 F.3d 177, 179 (5th Cir. 2015). Employment discrimination laws were "not intended to be a

---

[41] [Doc. 32-2, p. 34].

vehicle for judicial second-guessing of employment decisions nor [are they] intended to transform the courts into personnel managers." *Moss v. BMC Software, Inc.,* 610 F.3d 917917, 926 (5th Cir. 2010).

"[T]the ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff." *Reeves v. Sanderson Plumbing Prods., Inc.,* 530 U.S. 133, 143 (2000) (internal quotation and citation omitted).

Dr. Katz argues that LTC Adams' decision to remove him was not mandated by the HELOS reset; that LTC Adams provided inconsistent, shifting explanations for removing Dr. Katz as chief of surgery; and, alternatively, that Dr. Katz's age was a motivating factor in the decision to remove him from his role as Chief of Surgery/Surgical Services.

### a.   (1) The Decision to Remove Dr. Katz was not Mandated by HELOS

Dr. Katz first argues that Defendant's reason for termination is pretextual because the decision to remove and replace Dr. Katz with MAJ Simoni was not mandated by HELOS. Further, he argues that the supervisory position was converted to a military position because of his age.

The evidence reflects that the HELOS reset reduced the number of supervisory positions at BJACH, and the Chief of Surgery/Surgical Services position was redesignated as a military position.

Defendant argues that this redesignation was in the best interest of BJACH as they were able to professionally develop lower ranking officers at Fort Polk, which Dr. Katz interprets to mean that young officers were replacing him. The word "young" as it is used to refer to certain officers has to do with their professional experience, not their age.  LTC Adams recommended MAJ Simoni because she had only recently reported to Fort Polk and was not involved in any prior

18

issues between Plaintiff and Dr. Isaiah, a colleague who was older than Plaintiff and still works at BJACH. MAJ Simoni needed the leadership experience for her upcoming promotion board.

The fact that Defendant's decision was not mandated by the HELOS reset does not automatically mean that the removal of Dr. Katz was pretextual for discrimination based on his age. Especially in light of the fact that MAJ Simoni did not receive a promotion as a result of her assignment of the supervisory duties or additional compensation, and Dr. Katz did not suffer a loss of pay or any other benefits as a result of the reassignment.

### b.   (2) LTC Adams provided inconsistent, shifting explanations for removing Dr. Katz as chief of surgery

Dr. Katz next argues that Defendant's have provided inconsistent and shifting explanations for the removal of Dr. Katz's supervisory role. Specifically, Dr. Katz asserts that LTC Adams initially maintained that the decision to remove Dr. Katz from his role was not a reflection of Dr. Katz's performance. However, Dr. Katz cited to LTC Adams deposition, wherein he said:

> Dr. Katz and Dr. Isaiah, our other general surgeon, had a longstanding inability to communicate effectively due to numerous personality conflicts[.] These conflicts would lead to recurrent disagreements between the two…[i]t was disruptive to the Department of Surgery and the Inpatient Medical Surgical Ward, and had the potential to seriously affect the quality and safety of patient care.[42]

This, Dr. Katz argues, is inconsistent with his previous statements. However, in that same deposition, LTC Adams stated:

> You're trying to make it a performance issue and that's not how I would describe it. I think she [] doesn't have a lot of biases that were brought into it by the past experiences or past relationships that Dr. Katz and Dr. Isaiah had. Because of that [] her leadership had a better chance of being effective.[43]

---

[42] [Doc. No. 37-9, Depo. of LTC Brian Adams, pp. 25-26].
[43] [Id., p. 26]

Defendant argues that LTC Adams' considerations in determining which uniformed officer should assume the supervisory duties was not "inconsistent" or "shifting" and does not show that Defendant's legitimate reasons for making the supervisory position a military position lacks credibility or otherwise shows pretext. When asked during his deposition why he felt MAJ Simoni was better suited to perform the supervisory duties, LTC Adams explained that Plaintiff's longstanding conflict with a fellow surgeon was disruptive to the department, and, as MAJ Simoni was new to BJACH, she did not have the same bias, which gave her leadership a better chance of being successful. He further explained that MAJ Simoni needed the leadership experience because her promotion board was approaching.

Dr. Katz's argument that LTC Adams' statements are inconsistent is misconstrued. LTC Adams was simply explaining that the two surgeons had a history of poor communication. This description was not a reflection of LTC Adams' decision to select MAJ Simoni as the Chief of Surgery/Surgical Services. The Court finds that LTC Adams and COL Ferguson's proffered explanations for converting the position and selecting MAJ Simoni were not motivated by discriminatory animus and were not pretextual.

c.   **(3) Dr. Katz's age was a Motivating Factor in the Decision to Remove him from his Role as Chief of Surgery/Surgical Services**

As stated above, Dr. Katz next asserts that his age was a motivating factor in the decision to remove him from his role as Chief of Surgery/Surgical Services because Defendant wanted to professionally develop lower ranking officers (i.e., "young" officers) at Fort Polk. "Lieutenant Colonel Adams [] decided to put uniform personnel in the department in leadership roles as career development opportunities for young officers. Colonel Ferguson supported the decision."[44]

---

[44] [Id., p. 32]

Defendants argue that Dr. Katz's interpretation of the word "young" is misguided here. The reference to young officers simply refers to how much professional experience the officer has. A young officer is generally someone who has served for less time.

Accordingly, the Court finds that Dr. Katz's contention that he was removed from his supervisory duties due to his age is misguided, and he has produced no evidence of pretext here. Accordingly, Defendant's Motion for Summary Judgment on the discrimination claims under the ADEA and Title VII is **GRANTED**, and Dr. Katz's claims under the ADEA and Title VII for discrimination are **DISMISSED**.

### 4.   Analysis—Retaliation under the ADEA and Title VII

The success of a retaliation claim can be separate and independent of the success of a discrimination claim, and the success of one is not dependent on the other. Title VII prohibits retaliation by an employer "against an employee for making a charge or otherwise participating in a Title VII proceeding." *Nilsson v. City of Mesa*, 503 F.3d 947, 953 (9th Cir. 2007) (citing 42 U.S.C. § 2000e–3).

Dr. Katz claims that Defendant retaliated against him for filing his EEO complaint.

Title VII retaliation claims based on circumstantial evidence are analyzed under the *McDonnell Douglas* burden-shifting framework. *McMillan v. Rust College*, *Inc.*, 710 F.2d 1112, 1116 (5th Cir. 1983) (holding that the burden-shifting structure set forth in *McDonnell Douglas Corp.*, 411 U.S. 792, applies to Title VII retaliation cases). Under this framework, the order and allocation of proof begins with Dr. Katz, who has the initial burden of establishing a *prima facie* case of retaliation. *Id*. To satisfy this burden, Dr. Katz must show that: (1) he engaged in activity protected by Title VII; (2) he suffered an adverse employment action by Defendants; and (3) a causal connection exists between the protected activity and the adverse employment action. *See*

21

*Davis v. Fort Bend Cnty.*, 765 F.3d 480, 489 (5th Cir. 2014). If Dr. Katz cannot support all three elements of a *prima facie* case of retaliation, then summary judgment for Defendants is appropriate. *See Stewart v. Miss. Transp. Comm'n*, 586 F.3d 321, 331 (5th Cir. 2009).

However, if Dr. Katz successfully establishes a *prima facie* case, the burden then shifts to Defendant to produce a legitimate, nonretaliatory reason for the adverse employment action. *Davis*, 480 F.3d at 490. Once Defendant makes this showing, the burden shifts back to Dr. Katz to prove that Defendant's proffered reason is actually pretext for retaliation. *Davis*, 765 F.3d at 490.

An employee establishes pretext by proving that "but for" the protected activity, he would not have suffered the employment actions of which he complains. *See Univ. of Tex. Southwestern Med. Ctr. v. Nassar*, 570 U.S. 338, 362 (2013). While this final step may seem identical to the causal connection prong of the *prima facie* case, the burden required to prove causation at this stage is more stringent.  Indeed, "[t]he ultimate determination in an unlawful retaliation case is whether the conduct protected by Title VII was a 'but for' cause of the adverse employment decision." *Long v. Eastfield Coll.*, 88 F.3d 300, 305 n.4 (5th Cir. 1996).

### a.  *Prima Facie* case of Retaliation

#### i.  Protected Activity

There is no dispute that Dr. Katz engaged in activity protected by Title VII by contacting an EEO counselor on October 16, 2018. Filing an EEO complaint is protected activity.

Therefore, this element of a *prima facie* case has been satisfied.

#### ii.  Adverse Employment Action

"Adverse employment actions" as defined by the Supreme Court in *Burlington Northern and Santa Fe Ry. Co. v White* are not limited to "those that are related to employment or occur at the workplace" and include "employer actions that would have been materially adverse to a

reasonable employee or job applicant." 548 U.S. at 67, 126 (2006). For an action to be considered an "adverse employment action" in a *prima facie* case for retaliation, the plaintiff must show "that a reasonable employee would have found the challenged action materially adverse, 'which in this context means it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination.'" *Id.* at 68, 126 U.S. 2405 (quoting *Rochon v. Gonzales,* 438 F.3d 1211, 1219 (D.C. Cir.2006)). This definition does not include "petty slights or minor annoyances that often take place at work and that all employees experience." *Id.* This is an objective standard that depends on the specific facts and circumstances of each case. *Id.* at 69.

Dr. Katz submits multiple "retaliatory acts" and states that when these are viewed in total and in conjunction with "threats to report Plaintiff to the Databank if he did not resign" constitute aggravating factors that warrant his constructive discharge, which would be an adverse employment action if Dr. Katz can prove all of the required elements.

Dr. Katz has not established that he has properly brought forth a constructive discharge claim to the Court. *See supra* pages 10-11 for analysis of Dr. Katz's constructive discharge claim. The Court will not analyze this element again, and Dr. Katz has not satisfied the adverse employment action element.

Accordingly, Dr. Katz cannot satisfy the requirements for establishing a *prima facie* case of retaliation, and his retaliation claim fails as a matter of law.

## III.    CONCLUSION

For the reasons set forth herein,

**IT IS ORDERED, ADJUDGED, AND DECREED** that Defendant Christine Wormuth's, in her official capacity as the Secretary of the Army and on behalf of Defendant Ryan McCarthy,

Motion for Summary Judgment [Doc. No. 15] is **GRANTED**, and Plaintiff Dr. Stephen Katz's claims are hereby **DISMISSED WITH PREJUDICE**.

MONROE, LOUISIANA, this 1st day of November 2022.

TERRY A. DOUGHTY
UNITED STATES DISTRICT JUDGE