UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAKE CHARLES DIVISION

| | |
|---|---|
| **STEPHEN J KATZ** | **CASE NO. 2:21-CV-00132** |
| **VERSUS** | **JUDGE TERRY A. DOUGHTY** |
| **RYAN D MCCARTHY** | **MAGISTRATE JUDGE LEBLANC** |

MEMORANDUM ORDER

Before the Court is a *Motion for Judgment as a Matter of Law, or Alternatively, Motion for New Trial under Rule 59(a) or for Remittitur under Rule 59(e)*, (ECF No. 135), filed by the defendant, Daniel P. Driscoll, in his official capacity as Secretary of the United States Army ("Army").[1] The plaintiff, Dr. Stephen J. Katz ("Dr. Katz") opposes (ECF No. 151). And the Army filed a Reply (ECF No. 155).

After careful consideration of the parties' memoranda and the applicable law, the Motion is **DENIED** in its entirety.

I. BACKGROUND

The Court and this case are old friends now. Dismissed on summary judgment, *see* ECF No. 54, revived on appeal, *see* ECF No. 57, and latest, tried before a jury, *see* ECF No. 120, this case is all grown up. Now, the losing party, the Army, seeks to have this Court disturb the jury's verdict. *See generally* ECF No. 153. The Army contends that the insufficiency of Dr. Katz's evidence, or prejudicial legal error, makes the verdict unreasonable or unreliable. *See id*. Not so; to be explained below.

---

[1] There is a new memorandum in support of the Motion, ECF No. 153, superseding the previous. *See* ECF No. 152.

1

In April 2016, the Army hired Dr. Stephen Katz as a civilian surgeon at Bayne-Jones Army Community Hospital in Fort Polk, Louisiana. He was 73 years old. In October 2016, he was appointed Chief of Surgery. Dr. Katz competed for the Chief of Surgery position against two other general surgeons, including Dr. Isaac Isaiah. The relationship between Dr. Katz and Isaiah ultimately deteriorated to the point where the two did not speak to each other.

Dr. Katz remained Chief of Surgery until August 1, 2018, when he was replaced by Major Caton Simoni, a 37-year-old active-duty Army Medical Corps Officer. The decision to replace Dr. Katz (a civilian) with Major Simoni (an officer) was part of a hospital-wide policy change implemented by the new Deputy Commander for Clinical Services, Lieutenant Colonel Brian Adams, M.D., which was designed "to put uniformed personnel in the department leadership roles as career development opportunities for young Officers." Upon learning that he had been replaced as Chief of Surgery, Dr. Katz submitted a Memorandum for Record entitled "Hostile work environment" in which he asserted that being replaced as Chief of Surgery without any notice "represented a total lack of respect and an extension of the hostile environment in which [he] functioned."

On August 17, 2018—approximately two weeks after he had been replaced as Chief of Surgery and nine days after his internal complaint—the hospital's Credentials Committee convened an *ad hoc* meeting and voted to place Dr. Katz's clinical privileges in abeyance "due to allegations and reported concerns regarding [his] approach to surgical procedures, unprofessional conduct with staff, as well as concerns regarding patient safety and professional integrity." The Committee also placed Isaiah's clinical privileges in abeyance the same day "due to allegations and reported concerns regarding [his] surgical skill and practices, [his] performance within Department of Surgery, and concerns [his] surgical practices are outdated and potentially unsafe to patients." Adams was the Chairperson of the Credentials Committee.

The Notices of Abeyance sent to Dr. Katz and Isaiah stated that the abeyance was valid for 15 days, with an option to extend it to 30 days, while an investigation was conducted into the allegations, and that if the investigation was still ongoing after 30 days, the abeyance would automatically convert into a summary suspension. The Notices also explained that if the investigation found "substantial cause to proceed," the hospital's Credentials Committee would send the case to a more thorough "peer review." In response to the abeyance, on August 21, 2018, Dr. Katz submitted another Memorandum for Record, this one entitled

2

"Summary of Inappropriate [B]ehavior from the Bayne-Jones Army Community Hospital Command Group," which, according to Dr. Katz, outlined the "overwhelming evidence that [he] was treated unfairly, and in a consistently hostile manner by Dr. Adams and the [hospital] command group."

An investigator was assigned to Isaiah's case on September 4, 2018, but an investigator was not assigned to Dr. Katz's case until September 17, 2018. Because the investigation into Isaiah was still ongoing—and the investigation into Dr. Katz had not even begun—when the 30-day window expired, their abeyances converted to summary suspensions on September 16, 2018. The investigations into Dr. Katz's and Isaiah's conduct were completed on October 3 and October 5, 2018, respectively. Both investigators recommended that the doctors' clinical privileges be reinstated. The Credentials Committee reviewed the investigators' reports during its October 10, 2018 meeting. As to Isaiah, the Committee voted to adopt the investigator's recommendation, and Isaiah's clinical privileges were reinstated the next day. But as to Dr. Katz, the Committee raised an additional concern—"potential fraudulent documentation on a postoperative patient"—that the investigator had not addressed. This concern about potentially fraudulent documentation dated back to a June 30, 2018 complaint that Isaiah had filed against Dr. Katz (Adams was CC'd on the complaint). The Committee therefore deferred voting on Dr. Katz's reinstatement until an investigation could be conducted into the potential fraudulent documentation. On October 16, 2018, shortly after learning about the Committee's decision, Dr. Katz contacted an Equal Employment Opportunity (EEO) counselor to initiate an informal complaint.

On November 7, 2018—with the investigation into the potential fraudulent documentation completed—the Committee met again to discuss Dr. Katz's suspension. The meeting minutes do not state whether the investigator substantiated the fraudulent documentation claim. Instead, the minutes note that the investigator "stated in his report that other complaints regarding Dr. Katz were leveled during the [investigator's] interviews" and that "[d]uring the committee discussion it came to light from a few members of the Credentials Committee that Dr. Dr. Katz has previously left patients without completing a handoff or report on a patient to the other surgeon on staff," *i.e.*, Isaiah. The Committee therefore voted to send Dr. Katz to peer review.

Dr. Katz's peer review was conducted on December 12, 2018. The review panel found "no significant concerns for patient care or patient safety" and noted that the "poor professional environment" between Dr.

3

Katz and Isaiah was "likely the reason for the identification of the [potentially fraudulent documentation] in question." The panel therefore recommended that Dr. Katz's clinical privileges be reinstated. However, the Credentials Committee did not convene to discuss the review panel's recommendation until January 25, 2019—more than a month later. In the interim, Dr. Katz filed a formal EEO complaint on December 28, 2018—alleging a hostile work environment and discrimination based on race, age (76), national origin (Jewish), and religion (Jewish)—and resigned effective January 2, 2019. He then amended his EEO complaint on January 3, 2019.

Dr. Katz alleges that, prior to tendering his resignation, Colonel Marla Ferguson, the hospital's commanding officer, threatened that if Dr. Katz did not resign, she would "end [his] career." On January 25, 2019—three weeks after Dr. Katz's resignation—the Credentials Committee voted to reinstate Dr. Katz's clinical privileges. Dr. Katz was informed of his reinstatement on January 31, 2019.

On January 18, 2021, Dr. Katz filed suit in federal court asserting four causes of action: (1) age discrimination; (2) hostile work environment; (3) retaliation; and (4) religious discrimination. At summary judgment, however, Dr. Katz proceeded only upon his claims that the Army had: (1) removed him from his position as Chief of Surgery because of his age, in violation of the Age Discrimination in Employment Act (ADEA); and (2) retaliated against him, in violation of the ADEA and Title VII of the Civil Rights Act of 1964, by placing his clinical privileges in abeyance, converting his abeyance to a summary suspension, and delaying resolution of the investigation into his conduct, which culminated in his constructive discharge.

*Katz v. Wormuth,* 22-30756, 2023 WL 7001391, at *1–3 (5th Cir. Oct. 24, 2023).

As mentioned previously, the Court dismissed Dr. Katz's claims entirely on summary judgment. *See* ECF No. 54. The Fifth Circuit affirmed the Court's dismissal of Dr. Katz's underlying discrimination claims but reversed with respect to the retaliation claim. *Katz,* 2023 WL 7001391, at *7–8. On remand, the retaliation claim again survived summary judgment. *See* ECF No. 63. Accordingly, the Court held a four-day jury trial on retaliation, and Dr. Katz prevailed. *See* ECF No. 120.

4

Specifically, the jury found that Dr. Katz engaged in protected activity under both Title VII and the ADEA and was unlawfully retaliated against for that protected activity. *See* ECF No. 122. The jury awarded $363,500 for past non-economic damages, $363,500 for future non-economic damages, and $363,500 for lost wages. *See id.*

Judgment rendered, *see* ECF No. 130, the Army now brings the instant Motion. *See* ECF No. 135. The Army makes four main arguments: (1) That the evidence does not support a finding that Dr. Katz's protected activity caused the adverse employment action; (2) that the Court let in too much evidence; (3) that the verdict form was inconsistent; and (4) that the damages award was excessive. *See* ECF No. 148-2 at 10–30. The Court will address each in turn—in its analysis below.

## II. LAW AND ANALYSIS

### A. Motion for Judgment as a Matter of Law

The Army first moves for judgment as a matter of law, *see* ECF No. 148-2 at 9–17, again, *see* ECF Nos. 116 & 118.

Rule 50 of the Federal Rules of Civil Procedure requires a party to "specify the judgment sought and the law and facts that entitle the movant to the judgment" upon motion at trial before the jury renders its verdict. Fed. R. Civ. P. 50(a)(2); *Puga v. RCX Sols., Inc.*, 922 F.3d 285, 290 (5th Cir. 2019). "If the pre-verdict motion is denied, then the party can renew its motion under Rule 50(b). But the renewed Rule 50(b) is 'technically only a renewal of the [Rule 50(a) motion for judgment as a matter of law].'" *Puga*, 922 F.3d at 290 (quoting *Mozingo v. Correct Mfg. Corp.*, 752 F.2d 168,

172 (5th Cir. 1985)) (bracketed language in original). Rule 50(b) provides in part: "If the court does not grant a motion for judgment as a matter of law under Rule 50(a), the court is considered to have submitted the action to the jury subject to the court's later deciding the legal questions raised by the motion."

Judgment as a matter of law under Rule 50 is warranted only where "the facts and inferences point so strongly and overwhelmingly in favor of one party that the court concludes reasonable jurors could not arrive at a contrary verdict." *Arsement v. Spinnaker Expl. Co.*, 400 F.3d 238, 248–49 (5th Cir. 2005) (quoting *Bellows v. Amoco Oil Co.*, 118 F.3d 268, 273 (5th Cir. 1997)) (citing Fed. R. Civ. P. 50(a)). Stated differently, "[a] jury verdict must be upheld unless there is no legally sufficient evidentiary basis for a reasonable jury to find as the jury did." *Heck v. Triche*, 775 F.3d 265, 273 (5th Cir. 2014) (quoting *Foradori v. Harris*, 523 F.3d 477, 485 (5th Cir. 2008)). Thus, to prevail on a Rule 50 motion, "the party opposing the motion must at least establish a conflict in substantial evidence on each essential element of [its] claim." *N. Cypress Med. Ctr. Operating Co. v. Aetna Life Ins. Co.*, 898 F.3d 461, 473 (5th Cir. 2018) (quoting *Goodner v. Hyundai Motor Co., Ltd.*, 650 F.3d 1034, 1039 (5th Cir. 2011)). "'Substantial evidence is more than a scintilla, less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Id.* (quoting *Conn. Gen. Life Ins. Co. v. Humble Surgical Hosp., L.L.C.*, 878 F.3d 478, 485 (5th Cir. 2017)).

"[W]hen evaluating the sufficiency of the evidence, [courts] view all evidence and draw all reasonable inferences in the light most favorable to the verdict." *Bryant*

6

*v. Compass Grp. USA Inc.*, 413 F.3d 471, 475 (5th Cir. 2005). However, "credibility determinations, the weighing of evidence, and the drawing of legitimate inferences from the facts" remain within the province of the jury. *Kelso v. Butler*, 899 F.3d 420, 425 (5th Cir. 2018) (quoting *Hurst v. Lee Cty.,*764 F.3d 480, 483 (5th Cir. 2014)).

Rule 50(b) further provides that a party "may file a renewed motion for judgment as a matter of law and may include an alternative or joint request for a new trial under Rule 59."

The Army here avers that the clear weight of the evidence adduced at trial does not support causation under Title VII or the ADEA. *See* ECF No 148-2 at 10. The Army concedes, in step with the Fifth Circuit's past ruling, that Dr. Katz was able to show the temporal proximity of the adverse employment actions to the protected activity. *See* ECF No. 148-2 at 11. But, according to the Army, mere temporal proximity is not enough, and Dr. Katz has shown no more. *See id.* The Army argues that the adverse actions of the credentialing committee (primarily, Dr. Katz's five-month suspension) were divorced from the protected activity (Dr. Katz's email to Caton Simoni ("Simoni"), a member of the credentialing committee, threatening to go to the EEO, and Dr. Katz's contact with the EEO). *Id.* at 11–17. The Army offers that Simoni was not the lynchpin of the credentialing committee's votes, that the actual EEO contact was not known to the credentialing committee until after their two meetings extending Dr. Katz's suspension, and that neutral outsiders are responsible for some of the delay. *See id.* The Army last argues that Dr. Katz failed to show an

7

"enmity" toward him due to his protected activity, so retaliatory causation cannot be met. *Id.* at 17.

The Army is wrong. Dr. Katz has more than temporal proximity. Of course, the evidence at trial created a compelling timeline in which Dr. Katz engaged in protected activity and was successively delayed from practicing. But it was the evidence that Dr. Katz's non-complaining comparator, Dr. Isaac Isaiah ("Dr. Isaiah"), was reinstated on October 11, 2018, *see* ECF No. 125-19, whereas Dr. Katz was reinstated on January 31, 2019, *see* ECF No. 125–25. It was the evidence that Dr. Katz's entire reinstatement process, as compared to Dr. Isaiah's, reeked of unjustified delay. *See e.g.,* ECF No. 140 at 152–153. It was that Dr. Isaiah was not threatened with reporting to the National Practitioner's Data Bank ("NPDB"). And it was that the functional difference between the two is that one cried discrimination and the other did not. The outside peer review concluded on December 14, 2018, that Dr. Katz did not need to be suspended, *see* ECF No. 125-22, yet Dr. Katz was not reinstated until January 31, 2019, *see* ECF No. 125-25, nearly a month after he resigned, *see* ECF No. 125-23. The Christmas holiday is not a sufficient excuse to deprive a surgeon of nearly two additional months of practice waiting for a signature. *Contrast with* ECF No. 141 at 165. The jury apparently concluded that this delay was punitive, and when compared with Dr. Isaiah and colored with the body of evidence before it, determined that the delay was punishment for EEO contact. *See* ECF No. 122. By the same token, it appears that the jury disbelieved certain testimony of Brian Adams and Marla Ferguson, which is well within its role as factfinder. *See Kelso*, 899 F.3d at 425.

In light of this evidence, the Court sees no reason to disturb the jury's verdict here. A judge should be "especially deferential" to jury verdicts, *Apache Deepwater, L.L.C. v. W&T Offshore, Inc.*, 930 F.3d 647, 653 (5th Cir. 2019), and be "wary of upsetting" them, *Goodner v. Hyundai Motor Co.*, 650 F.3d 1034, 1039 (5th Cir. 2011). That said, as laid out above, Dr. Katz showed "other evidence, in combination with … temporal proximity, [] sufficient for a reasonable jury to find but-for causation." *Harris v. FedEx Corp. Servs., Inc.*, 92 F.4th 286, 297 (5th Cir. 2024) (citing *Brown v. Wal-Mart Stores E., L.P.*, 969 F.3d 571, 579 (5th Cir. 2020)). Accordingly, judgment as a matter of law is once more unwarranted.

**B. Alternative Motion for a New Trial**

The Army alternatively moves for a new trial, citing jury unreliability, evidentiary disputes, and issues with the jury instructions and verdict form.

Rule 59(a) provides a district court discretion to grant a new trial "on all or some of the issues ... after a jury trial, for any reason for which a new trial has heretofore been granted in an action at law in federal court." Fed. R. Civ. P. 59(a); *see also Eiland v. Westinghouse Elec. Corp.*, 58 F.3d 176, 183 (5th Cir. 1995) ("the decision to grant or deny a motion for new trial ... rests in the sound discretion of the trial judge"). While the rule does not specify the grounds necessary for granting a new trial, the Fifth Circuit has instructed that "[a] new trial may be granted, for example, if the district court finds the verdict is against the weight of the evidence, the damages awarded are excessive, the trial was unfair, or prejudicial error was committed in its course." *Smith v. Transworld Drilling Co.*, 773 F.2d 610, 613 (5th Cir. 1985). A district

9

court may also grant a new trial when the jury's verdict is logically inconsistent if, after viewing the evidence in the light most favorable to a finding of consistency, reconciliation is impossible. *See Ellis v. Weasler Eng'g Inc.*, 258 F.3d 326, 343 (5th Cir. 2001); *Willard v. The John Hayward*, 577 F.2d 1009, 1011 (5th Cir. 1978).

When a movant argues that insufficient evidence supports the verdict, the district court should deny the motion "unless the verdict is against the great weight of the evidence." *Pryor v. Trane Co.*, 138 F.3d 1024, 1026 (5th Cir. 1998) (quoting *Dotson v. Clark Equip. Co.*, 805 F.2d 1225, 1227 (5th Cir. 1986)); *see also Shows v. Jamison Bedding, Inc.*, 671 F.2d 927, 930 (5th Cir. 1982) ("new trials should not be granted on evidentiary grounds unless, at a minimum, the verdict is against the great —not merely the greater—weight of the evidence") (quotation omitted). In contrast to the standard applicable to a Rule 50 motion, "[a] verdict can be against the 'great weight of the evidence,' and thus justify a new trial, even if there is substantial evidence to support it," and a district court may weigh the evidence when resolving whether a new trial should be granted on this ground. *Shows*, 671 F.2d at 930.

Moreover, the Seventh Amendment requires district courts "to make a concerted effort to reconcile apparent inconsistencies in answers to special verdicts if at all possible." *Alverez v. J. Ray McDermott & Co.*, 674 F.2d 1037, 1040 (5th Cir. 1982) (citations omitted). Courts "therefore must attempt to reconcile the jury's findings, by exegesis, if necessary, before [they] are free to disregard the jury's verdict and [order a] new trial." *Id.* (quotation marks and citations omitted). A new trial is warranted only if there is "no view of the case which makes the jury's answers

10

consistent and that the inconsistency is such that the special verdict will support neither the judgment entered ... nor any other judgment." *Id.* (citation modified).

    *i.*    *Against the Great Weight of the Evidence*

The Army contends that the jury's finding of causation was not supported by the evidence. *See* ECF No. 148-2 at 18. For substantially the same reasons that the Court denied the Army's Motion for Judgment as a Matter of Law, *ante* at 5–9, the Court finds in the context of a new trial that the jury did not err in finding causation in light of the evidence adduced at trial. *See id.* Again, the jury concluded that Dr. Katz's numerous complaints regarding perceived discrimination led to his suspension for five months, effectively resulting in his constructive discharge. *Id.* at 8 (citing the trial record). In concluding as much, the jury apparently did not credit some of the Army's witnesses' testimony, which is not grounds for a new trial. *See Lavender v. Kurn,* 327 U.S. 645, 653 (1946) ("Where, as here, there is an evidentiary basis for the jury's verdict, the jury is free to discard or disbelieve whatever facts are inconsistent with its conclusion."). This conclusion was not against the "great weight of the evidence." *See Pryor*, 138 F.3d at 1026. Therefore, the Court is bound to deny the Motion and leave the verdict undisturbed in this respect. *See id.*

    *ii.*    *Clearly Excessive Verdict*

The Army next moves for a new trial on the basis that the jury's compensatory damages award was "clearly excessive." *See* ECF No. 148-2 at 19.

"There is a strong presumption in favor of affirming a jury award of damages." *Eiland v. Westinghouse Elec. Corp.*, 58 F.3d 176, 183 (5th Cir. 1995). "The damage

11

award may be overturned only upon a clear showing of excessiveness or upon a showing that the jury was influenced by passion or prejudice." *Id.* "However, when this court is left with the perception that the verdict is clearly excessive, deference must be abandoned." *Id.* "A verdict is excessive if it is 'contrary to right reason' or 'entirely disproportionate to the injury sustained.'" *Id.* (quoting *Caldarera v. E. Airlines, Inc.*, 705 F.2d 778, 784 (5th Cir. 1983)).

The jury here awarded $727,000 in compensatory damages. *See* ECF No. 122. This award is statutorily capped at $300,000. *See* 42 U.S.C.A. § 1981a(b)(3)(D). So, $300,000 is the amount to be analyzed for clear excessiveness. *See Giles v. Gen. Elec. Co.*, 245 F.3d 474, 487 (5th Cir. 2001) ("When deciding whether a jury award is excessive, we consider the amount of the award after application of the statutory cap, not the amount given by the jury."). To conduct this inquiry, the Court must "look[] to other published decisions from the relevant jurisdiction ... involving comparable facts." *See Longoria v. Hunter Express, Ltd.*, 932 F.3d 360, 365 (5th Cir. 2019). Here, "[t]he relevant jurisdiction for federal discrimination law can only mean cases decided by [the Fifth Circuit]." *Salinas v. O'Neill*, 286 F.3d 827, 832 (5th Cir. 2002) (internal quotations omitted).

The Army offers *Thomas v. Texas Dept. of Criminal Justice*, 297 F.3d 361, 368 (5th Cir. 2002), and *Vadie v. Mississippi State Univ.*, 218 F.3d 365, 378 (5th Cir. 2000), for the proposition that the award here was clearly excessive. *See* ECF No. 153 at 20-22. Dr. Katz offers *Tureaud v. Grambling State Univ.*, 294 Fed. Appx. 909, 916 (5th Cir. 2008) for the opposite proposition. *See* ECF No. 151 at 35–36.

Before we reach dollars and cents, *Thomas* and *Vadie* both stand for the proposition that substantial compensatory damages, and specifically, emotional distress damages, need to be corroborated—and not solely established by a plaintiff's testimony. *See Thomas*, 297 F.3d at 368; *Vadie*, 218 F.3d at 377–78. True. But Dr. Katz's compensatory damages were not merely proven-by-pity-party here. Testimony was elicited from Dr. Katz, but also from others, of the effect that suspension has on a surgeon, and the effect it had on Dr. Katz specifically. *See, e.g.,* ECF No. 139 at 71, 79, 83–84, 87–88, 118, and 173–174. And unlike the plaintiff in *Vadie*, this testimony was not "brief." *Contrast* ECF No. 148-2 at 21 (citing *Vadie*, 218 F.3d at 378). Furthermore, Dr. Katz's treating cardiologist linked his increased stress (of being suspended, out of practice, relocating, etc.) with a life-threatening heart condition. *See* ECF No. 140 at 67–69, 92–93. So far, considering this evidence, the jury's verdict is not "contrary to right reason[.]" *Giles,* 245 F.3d at 487.

*Thomas,* decided in 2002, spoke of the relative rarity of six-figure emotional distress awards in the Title VII context. *Thomas*, 297 F.3d at 368–70. But detracting from *Thomas*'s observations, judgment here was rendered twenty-three years later, with roughly 79% in cumulative inflation since. *See id.* Furthermore, and in contrast, Katz's chosen case, *Tureaud*, awarded $140,000 in emotional distress damages based solely on the plaintiff's uncorroborated testimony—all in 2006. *See Tureaud*, 294 Fed. Appx. at 916. Given the staleness of the Army's numbers and the relative wealth of emotional distress evidence that Dr. Katz put on, the Court finds that the award here was not "clearly excessive" or worthy of retrial. *Eiland,* 58 F.3d at 183.

13

### iii. *Inconsistent Verdict Form*

The Army also decries an inconsistent verdict form. *See* ECF No. 148-2 at 23. Quite rich. The parties submitted an agreed-upon, uncontested verdict form on February 17, 2025, *see* ECF No. 112, in accord with the operative Scheduling Order, *see* ECF No. 86 at 6. The Scheduling Order prescribed that: "The proposed verdict form shall be ONE DOCUMENT PREPARED JOINTLY BY ALL PARTIES. Any contested interrogatories should be clearly labeled and followed by the objection of the opposing party with any applicable legal authority for the objection." *Id.* Rather than proceed with this verdict form, however, the parties (led by the Army, may we add) decided to rewrite the entire verdict form *after the jury had been charged. See* ECF No. 142 at 87. That said, it is a miracle that Question 5 was the only major issue.

But the Court needn't reach Question 5, and the potential discord wrought by its slapdash double-negative phrasing, because the Army waived any objection. "A party waives its arguments about inconsistency in general verdicts with written questions by not raising them until after the jurors are discharged." *Great W. Cas. Co. v. Deepwell Energy Servs., LLC,* 766 F.Supp.3d 686, 689 (W.D. Tex. 2025) (citing *Waypoint,* 976 F.3d at 515; *id.* at 521 ("This rule is consistent with "[m]ost of the federal courts that have addressed the issue .... [A] party's failure to object to an inconsistency between the response to a special interrogatory and the general verdict waives the right to further deliberation by the jury or to the grant of a new trial motion."); 9B Charles Alan Wright, Arthur R. Miller, Fed. Prac. & Proc. § 2513 (3d ed. 2020)). Memory serves, and the record makes clear, that Dr. Katz raised

14

the issue of Question 5, not the Army. *See* ECF No. 142 at 94–96. The Army did not join in the objection. *See id.* And after both parties were given time to review the interrogatories, counsel for Dr. Katz said, "Your Honor, upon further review, if there is a problem, we'll file some kind of motion. *And after reviewing that, I don't think there is. So we'll file a written judgment.*" *Id.* at 97 (emphasis added). The Army remained mum again. Accordingly, this issue is waived.[2]

### iv. August 22, 2018, Email

The Army contends that the jury could not have reasonably concluded that Dr. Katz's August 22, 2018, email threatening EEO involvement was protected activity under Title VII. *See* ECF No. 148-2 at 24. Specifically, the Army charges that Dr. Katz presented no evidence that the email was sent due to perceived religious discrimination. *See id.* But that's wrong. The Army, at numerous turns, sought to sterilize this case of the underlying discrimination claims that were dismissed on the briefs. *See* ECF No. 30; *see also* ECF No. 139 at 44, 94–97. Indeed, the reason for admitting the below-discussed "Memoranda for Record" ("MFRs") was to show why Dr. Katz sent the August 22, 2018, email, and why he was considering EEO involvement. *See* ECF No. 139 at 44, 94–97. There is no ground for a new trial here.

### v. Improper Jury Instruction

The Army next contends that one of the jury instructions was erroneous. *See* ECF No. 148-2. But, just as with the verdict form issue above, it is not the Army's prerogative to subject this Court, or a jury of eight more people, to another four-day

---

[2] The same goes for the issue with footnote 1, on Question 8, for the same reasons. *See* ECF No. 148-2 at 26–27.

jury trial on this matter because they failed to adhere to the Court's Scheduling Order. Their objections to Dr. Katz's jury instructions were due two weeks prior to trial, *see* ECF No. 86 at 6, and they noted none, *see* ECF No. 111. Worse still, Dr. Katz's counsel asked not once but twice via email whether the Army had any objection to the use of the contested instruction, to which the Army replied "fine" and later "No substantive changes." *See* ECF No. 151-1 at 46–48. To be sure, Rule 51(c)(2) of the Federal Rules of Civil Procedure allows for objections to be made "before the instructions and arguments are delivered." But alterations to the instructions are only permitted on "issues that could not reasonably have been anticipated by an earlier time that the court set for requests" and even then, those alterations must still be "with the court's permission." *See* Fed R. Civ. P. 51(a)(2). Further, "A court has the inherent power to enforce its scheduling order[]"—a Scheduling Order here which clearly set out a deadline for objections—"and to impose sanctions" for violating that Scheduling Order. *See* Fed. R. Civ. P. 16(f). While not really the imposition of a sanction, "[i]t is elementary that the granting or refusing of a new trial in federal courts is within the sound discretion of the judge," and in our sound discretion, the Court says "No." *See Nat'l Box Co. v. Wroten*, 66 F.2d 86 (5th Cir. 1933) (Foster, J.).

   vi.  *Erroneous Evidentiary Rulings*

The Army charges that the Court erroneously admitted the three MFRs that Dr. Katz contemporaneously authored during the relevant period at BJACH. *See* ECF No. 148-2 at 27–28. The Army argues that the MFRs were minimally probative and unfairly prejudicial. *See id.* This argument again hems to the common thread of this

16

Motion—the Army complaining of problems they created. The Army didn't want the jury to hear about the underlying claims of discrimination. *See ante* at 14. Dr. Katz sagely proposed that the parties stipulate that the August 22, 2018, email constituted protected activity, thereby avoiding the MFRs and the jury's involvement in the question. *See* ECF No. 139 at 101–03. The Army declined, *see id.* at 103, so the MFRs became necessary.

"A district court, of course, has power to grant a new trial when the jury has inadvertently considered inadmissible evidence, and the evidence was prejudicial to the losing party." *Carson v. Polley,* 689 F.2d 562, 570 (5th Cir. 1982) (citing *Montgomery Ward & Co. v. Duncan*, 311 U.S. 243, 251 (1940)). Admissibility here is guided by Federal Rule of Evidence 403, which asks whether the "probative value [of the MFRs] is substantially outweighed by a danger of … unfair prejudice." *See* Fed. R. Civ. P. 403. The MFRs were admissible because they bore on the predicate question of whether Dr. Katz perceived any discrimination and, as a result, engaged in protected activity under Title VII. *See Alack v. Beau Rivage Resorts, Inc.,* 286 F.Supp.2d 771, 773–75. (S.D. Miss. 2003). The risk of unfair prejudice did not substantially outweigh the MFR's necessity in this question, and in any event, is metered by the Army's unwillingness to allow Dr. Katz to prove his case in a different way. Accordingly, a new trial is not warranted.

  *vii.* *Direct Witness Drama*

The Court cannot begin to fathom how Dr. Katz's being allowed to call two witnesses-in-common on direct examination was a substantially prejudicial error so

17

as to warrant retrial of this case. *Contrast with* ECF No. 148-2 at 28–29. The Army cites no authority for this proposition, either in their Motion, *see* ECF No. 148-2 at 28–29, or their Reply brief, *see* ECF No. 155 at 7–8, which is telling enough. But they do not even articulate what evidence elicited was so prejudicial—under whatever standard. *See id.* This was an inane conflict when it was initially raised, *see* ECF No. 101 at 2, and remains so. Accordingly, finally, there is no ground for a new trial.

### C. Alternative Motion to Remit

The Army last moves for remittitur. *See* ECF No. 148-2 at 30.

The remedy of remittitur is compatible with federal question cases, *see* Wright & Miller, § 2815 Remittitur, 11 Fed. Prac. & Proc. Civ. (3d ed. 2012), like the Title VII matter before us today, *see Vadie,* 218 F.3d at 378. Still, it is only available in limited circumstances:

> Remittitur can be ordered in two ways. In the first, the plaintiff is offered a choice—accept the remittitur or a new trial will be ordered. In the second, remittitur is ordered without offering the plaintiffs a new trial. This method is only permissible, without running afoul of the Seventh Amendment, where it is apparent as a matter of law that certain identifiable sums included in the verdict should not have been there.

*Structural Metals, Inc. v. S & C Elec. Co.,* 590 Fed. Appx. 298, 302 (5th Cir. 2014) (citation modified). A motion for remittitur may be made under, or in conjunction with, a motion under Fed. R. Civ. P. 59(e). *See id.* at 301–02.

Courts may remit damages that are unsupported by evidence adduced at trial or otherwise based upon miscalculations by the jury, if the error is apparent as a matter of law. *See Theriot v. Brit Systems, Inc.,* CV 11-1995, 2013 WL 12238852, at

18

*1 (E.D. La. Apr. 23, 2013); *Consolidated Companies, Inc. v. Lexington Insurance Company*, 616 F.3d 422, 435 (5th Cir. 2010).

The Court found above that the damages award was not excessive or erroneous, *ante* at 12–13, so remittitur is not warranted either. *Cf. Wantou v. Wal-Mart Stores Texas, L.L.C.,* 23 F.4th 422, 431 (5th Cir. 2022) ("When defects in the award are readily identifiable and measurable, remittitur ordinarily is appropriate.") (citation modified).

### III. CONCLUSION

For the foregoing reasons,

**IT IS ORDERED** that the Army's Motion is **DENIED** in its entirety.

**MONROE, LOUISIANA**, this 10th day of July, 2025.

_____
Terry A. Doughty
United States District Judge