UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAKE CHARLES DIVISION

| | |
|---|---|
| **STEPHEN J KATZ** | **CASE NO. 2:21-CV-00132** |
| **VERSUS** | **JUDGE TERRY A. DOUGHTY** |
| **RYAN D MCCARTHY** | **MAGISTRATE JUDGE LEBLANC** |

## MEMORANDUM ORDER

Before the Court is a *Motion for Attorney's Fees, Pre-Judgment Interest, and Post-Judgment Interest* (ECF No. 133), filed by the plaintiff, Dr. Stephen J. Katz ("Dr. Katz"). The defendant, Daniel P. Driscoll, in his official capacity as Secretary of the United States Army ("Army") opposes (ECF No. 144). Dr. Katz replied (ECF No. 147). Also before the Court is a Bill of Costs (ECF No. 137) filed by Dr. Katz, which has also been fully briefed. *See* ECF Nos 146 & 154.

After careful consideration of the parties' memoranda and the applicable law, both Motions are **GRANTED**.

### I.   BACKGROUND

This case stems from Dr. Katz's employment with the Army. Following his departure from that employment, Dr. Katz sued, alleging age and religious discrimination and retaliation. *See* ECF No. 1. The Court dismissed Dr. Katz's claims entirely on summary judgment. *See* ECF No. 54. The Fifth Circuit affirmed the Court's dismissal of Dr. Katz's underlying discrimination claims but reversed with respect to the retaliation claims. *Katz v. Wormuth,* No. 22-30756, 2023 WL 7001391, at **7–8 (5th Cir. Oct. 24, 2023). On remand, the retaliation claims survived

1

summary judgment. *See* ECF No. 63. The Court then held a four-day jury trial on retaliation, and Dr. Katz won. *See* ECF No. 120.

Dr. Katz, as the prevailing party, filed the instant Motion seeking attorney's fees, pre-judgment interest, and post-judgment interest. *See, generally,* ECF No. 133. The Army argues that his request is excessive and should be reduced. *See, generally*, ECF No. 144. The Court will address the parties' respective arguments in further detail below.

## II. LAW AND ANALYSIS

### A. Attorney's Fees

Dr. Katz seeks attorney's fees in the amount of $200,000.00. The statutes under which Dr. Katz sued, Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e, *et seq*, and the Age Discrimination in Employment Act of 1967 ("ADEA"), 29 U.S.C. § 621, *et seq*, both provide for the awarding of attorney's fees to the prevailing party. *See Indep. Fed'n of Flight Attendants v. Zipes*, 491 U.S. 754, 758 (1989) (Title VII attorney's fees); *see also Hoffmann–La Roche, Inc. v. Sperling,* 493 U.S. 165, 167 (1989) (explaining that the ADEA incorporates the enforcement provisions of the FLSA); *and* 29 U.S.C. § 216(b) (the "FLSA") ("[t]he Court ... shall, in addition to any judgment awarded to the plaintiff ..., allow a reasonable attorney's fee to be paid by the defendant, and costs of the action."). An attorney's fee award rests within the sound discretion of the district court. *Combs v. City of Huntington, Texas,* 829 F.3d 388, 391 (5th Cir. 2016). Indeed, "[d]ue to the district court's superior knowledge of the facts and the *desire to avoid appellate review of factual matters,* the

district court has broad discretion in setting the appropriate award of attorneys' fees." *Watkins v. Fordice,* 7 F.3d 453, 457 (5th Cir. 1993).

To determine the amount of attorney's fees to be awarded, the Fifth Circuit utilizes a two-step process, called the lodestar method. *La. Power & Light Co. v. Kellstrom,* 50 F.3d 319, 323–24 (5th Cir. 1995). Under this method, a court first determines the reasonable number of hours expended on the litigation and the reasonable hourly rates for the participating attorneys. *Id.* at 324. Then, the Court must determine a lodestar by multiplying the reasonable hours by the reasonable hourly rates. *Id.* (citing *Blum v. Stenson,* 465 U.S. 886, 888 (1984)).

There is a strong presumption of the reasonableness of the lodestar amount. *Saizan v. Delta Concrete Prods. Co., Inc.,* 448 F.3d 795, 800 (5th Cir. 2006). However, after calculating the lodestar, the court may adjust the lodestar amount upward or downward based upon its analysis of twelve factors enumerated in *Johnson v. Georgia Highway Express, Inc.,* 488 F.2d 714, 717–19 (5th Cir. 1974). *Id.*

The most critical factor in determining an attorney's fee award is the degree of success obtained. *Saizan,* 448 F.3d at 799. Fee applicants bear the burden of establishing the appropriate hours and hourly rates and proving they exercised billing judgment. *Id.; see also Walker v. City of Mesquite, Tex.,* 313 F.3d 246, 251 (5th Cir. 2002); *Riley v. City of Jackson, Miss.,* 99 F.3d 757, 760 (5th Cir. 1996). Billing judgment requires documentation of the hours charged and of hours not charged because they were unproductive, excessive, or redundant. *Saizan,* 448 F.3d at 799. The proper remedy for omitting evidence of billing judgment does not include a denial

3

of fees but, rather, a reduction of the award by a percentage intended to substitute for the exercise of billing judgment. *Id.*; *Walker,* 313 F.3d at 251.

A fee applicant can only meet his burden by presenting evidence that is adequate for a court to determine what hours should be included in the reimbursement. *Bode v. United States,* 919 F.2d 1044, 1047 (5th Cir. 1990). Thus, courts generally require the applicant to produce contemporaneous billing records or other sufficient documentation so that the district court can fulfill its duty to examine the application for noncompensable hours. *Id.* If the documentation is vague or incomplete, a court may reduce the hours. *Kellstrom,* 50 F.3d at 324.

Last, and relevant here, "work on an unsuccessful claim cannot be deemed to have been 'expended in pursuit of the ultimate result achieved' ... and therefore no fee may be awarded for services on [an] unsuccessful claim." *Hensley v. Eckerhart,* 461 U.S. 424, 435 (1983). If unrelated to the successful claims, the unsuccessful ones must "be treated as if they had been raised in separate lawsuits" and excluded from the fee award. *Id.* at 435–36 (noting that "[t]he district court may attempt to identify specific hours that should be eliminated"). "But when claims ... share a 'common core of facts' or 'related legal theories,' a fee applicant may claim all hours reasonably necessary to litigate those issues." *Kellstrom*, 50 F.3d at 327 (quoting *Hensley*, 461 U.S. at 434–35). "When a plaintiff's claims cannot be disentangled, the district court's focus should shift to the results obtained and adjust the lodestar accordingly." *Id.* at 327 n.1.

4

*i. Hours Claimed*

A court's first step in determining reasonable attorney's fees is to determine whether the hours claimed were reasonably expended on the litigation. *Id.* Courts should examine both whether the total number of hours claimed is reasonable and whether specific hours claimed were reasonably expended. *League of United Latin Am. Citizens # 4552 v. Roscoe Indep. Sch. Dist.,* 119 F.3d 1228, 1232 (5th Cir. 1997). If the hours are not reasonably expended, they should be excluded from the initial fee calculation. *Kellstrom,* 50 F.3d at 324. Dr. Katz's lead counsel, James E. Sudduth, III ("Sudduth"), of the law firm Sudduth & Associates, L.L.C., submitted supporting affidavits and detailed billing records as evidence of the reasonableness of the hours spent on litigation. *See* ECF Nos. 133-3 & 133-4.

The Court finds generally that the hours claimed here were reasonably expended. Sudduth begins his lodestar calculation with a claim of 811.2 total firm-wide hours. *See* ECF No. 133-2 at 15. After removing hours expended prosecuting unsuccessful claims that are readily extricable from the work on the successful claims, after removing unproductive, duplicative, and clerical hours, and making other concessions, Sudduth reaches 728.50 total firm-wide hours. *See id.* at 26. A review of the billing statements demonstrates that the descriptions of the claimed activities, and the time incurred for them, are either reasonable, or were reasonably excluded by Sudduth in his request to the Court—exclusion which evinces his exercise of the requisite "billing judgment." *See Saizan,* 448 F.3d at 799–800.

The Army contends that a certain more of these hours should be excluded for being clerical in nature or inadequately described, especially focusing on the paralegal work. *See* ECF No. 147 at 6. In reply, and responsive to the Army's concerns, Sudduth reduces his total fee by an additional $1455.00. *See* ECF No. 147 at 3. Considering the further concession, again, the Court finds Sudduth's baseline lodestar calculation reasonable.

*ii. Reasonable Hourly Rate*

Reasonable hourly rates are determined by looking to the prevailing market rates in the community in which the district court sits. *Tollett v. City of Kemah,* 285 F.3d 357, 368 (5th Cir. 2002). Sudduth bears the burden of producing evidence that the requested rate is appropriate within the Lake Charles market. *See Deltatech Constr., LLC v. The Sherwin–Williams Co.,* No. Civ.A.04–2890, 2005 WL 3542906, at *3 (E.D.La. Nov. 3, 2005). Generally, the reasonable hourly rate for a particular community is established through affidavits of other attorneys practicing there. *Tollett,* 285 F.3d at 357 (citing *Watkins,* 7 F.3d at 458). The evidence to support an hourly rate entails more than an affidavit of the attorney performing the work but must also address the rates actually billed and paid in similar lawsuits. *See Deltatech Constr., LLC,* 2005 WL 3542906, at *3.

Mr. Sudduth seeks $275.00 an hour for work prior to August 1, 2022; $300.00 an hour for work after August 1, 2022; and $400 for all trial hours. In support of his rates, Sudduth provided *Miller v. Lenard Enterprises, LLC,* 2:17-CV-01063, 2019 WL 6711886, at *3 (W.D. La. Dec. 9, 2019) and *Migdon v. 171 Holdings LLC,* 2:18-CV-

6

00160, 2022 WL 4110956, at *3 (W.D. La. Sept. 8, 2022). These cases both award comparable non-trial attorneys' fees to Mr. Sudduth ($250.00 or $275.00 an hour) and his associates ($200 an hour), especially when considering the significant inflation since 2019 and 2022, respectively. This logic applies to the rates sought by Kourtney Kech, who seeks $200.00 per hour for her work prior to becoming a partner and $275.00 per hour for work following her becoming a partner. And so too for the associate, Mr. Fourcade, who seeks $200.00 an hour. Finally, the $125 an hour rate for the paralegals is reasonable. *See* ECF No. 133-2 at 24–25 (collecting cases).

    *iii*. Johnson *Factors*

After calculating the lodestar amount, a court may adjust the amount upward or downward based upon the circumstances of the case by considering the twelve *Johnson* factors. *Saizan,* 448 F.3d at 800. Of the *Johnson* factors, a court should give special heed to the time and labor involved, the customary fee, the amount involved, the result obtained, and the experience, reputation, and ability of counsel. *Id.* However, the lodestar may not be adjusted due to a *Johnson* factor if the lodestar calculation already took that factor into account. *Id.*

Considering the other *Johnson* factors that were not subsumed within the lodestar analysis, the most critical factor in determining the reasonableness of a fee award is the degree of success obtained. *Saizan,* 448 F.3d at 800. Accordingly, the eighth *Johnson* factor—the amount involved and the results obtained—requires the Court to determine Katz's success as a factor in evaluating a reasonable fee award. Katz received a favorable verdict on both his retaliation claims and was awarded

$1,090,500.00. *See* ECF No. 130. $727,000 of that award was compensatory damages, which were reduced to a $300,000 statutory cap, so Dr. Katz was awarded the maximum recoverable amount as to part of his damages. *See id.* But Dr. Katz did not pass go on half of his claims. *See* ECF No. 144 at 7. His underlying discrimination claims under both the ADEA and Title VII never made it to trial. *See Katz,* 2023 WL 7001391, at *3. (explaining that Katz initially brought "(1) age discrimination; (2) hostile work environment; (3) retaliation; and (4) religious discrimination [claims]. At summary judgment, however, Katz proceeded only upon his claims that the Army had: (1) removed him from his position as Chief of Surgery because of his age, in violation of the [ADEA]; and (2) retaliated against him, in violation of the ADEA and Title VII […]."); *see also id.* at *9 (reversing and remanding only "with respect to Katz's retaliation claim."). Dr. Katz argues that a certain amount of effort spent on the unsuccessful claims is inextricably intertwined and thus inseparable from the total fee. *See* ECF No. 133-2 at 18–19. He also provides, as the Court has above, the instruction from *Kellstrom* that *inextricable* fees for unsuccessful claims should be analyzed in the "results obtained" *Johnson* factor. *See Kellstrom*, 50 F.3d at 327. Sudduth has already excluded those fees that were readily extricable, in other words, those fees that were easily attributable to certain unsuccessful claims. *See ante*, at 5. And the Court cannot use the *Johnson* adjustment to double-count (or double discount) fees subsumed in the lodestar analysis. *See Shipes,* 987 F.2d at 320 (a "district court must be careful ... not to double count a *Johnson* factor already considered in calculating the lodestar"). Accordingly, and mindful of avoiding double-

8

counting, the Court reduces the total fee by 25% in light of Dr. Katz's unsuccessful claims, to account for fees incapable of extrication and not subsumed in the lodestar. *See Zisumbo v. Ogden Reg'l Med. Ctr.,* 801 F.3d 1185, 1208 (10th Cir. 2015) (affirming a by 40% reduction of the lodestar amount because the plaintiff succeeded only on his retaliation claim and not his underlying discrimination claims).

Furthermore, although the attorneys dedicated a significant amount of time to this case, there is no evidence that the attorneys had to refuse other work to litigate the case. Moreover, because the case spanned more than four years, the attorneys who worked on the case apparently had time available to devote to other employment opportunities. Finally, there is no evidence that Dr. Katz was an undesirable client or did not fully cooperate with his attorneys. Accordingly, the Court concludes that the *Johnson* factors do not warrant an upward or downward adjustment of the lodestar.

### iv. Exceptional Case Enhancement

As noted previously, there is a strong presumption that the lodestar amount is reasonable. *Saizan,* 448 F.3d at 800. Enhancement of the lodestar amount based upon the complexity of the issues is only appropriate in rare and exceptional circumstances and must be supported by specific evidence in the record. *Heidtman v. County of El Paso,* 171 F.3d 1038, 1043 (5th Cir. 1999); *Shipes,* 987 F.2d at 320–21.

Despite the excellent advocacy provided by counsel for both plaintiff and defendant, the Court does not find the case to be exceptional. It involved one plaintiff, one defendant, and a retaliation claim. Although Katz was a prevailing party, the

9

Court finds this fact alone does not warrant an upward adjustment because the lodestar is strongly presumed reasonable. *See Heidtman,* 171 F.3d at 1043 (citing *Pennsylvania v. Del. Valley Citizen's Council for Clean Air,* 478 U.S. 546, 565 (1986) for the proposition that the "complexity of the issues" and "results obtained" are presumably fully reflected in the lodestar amount and thus cannot serve as independent bases for increasing the basic fee award). Moreover, there is no evidence that employment discrimination cases are unusually difficult to prosecute in the Western District of Louisiana. Therefore, the Court finds the case was relatively straightforward and does not warrant an upward adjustment of the lodestar amount.

To sum up, the Court finds that Dr. Katz's initial, baseline lodestar is properly set at $174,342.50. The Court further finds that a downward adjustment of 25% is warranted based on Dr. Katz's lack of success on his underlying discrimination claims, and his minimal reliance on the facts surrounding that discrimination in prevailing on his retaliation claim at trial. *See Merriweather v. Family Dollar Stores of Indiana, Inc.,* 103 F.3d 576, 584 (7th Cir. 1996) (discussing in a case where discrimination and retaliation were both tried before a jury, and only retaliation was found, that fees for unsuccessful underlying discrimination claims are recoverable only insofar as the retaliation claim "could not have been tried fairly without the evidence of the events that led to the underlying discrimination charge and that led up to the discharge."); *see also Zisumbo v. Ogden Reg'l Med. Ctr.,* 801 F.3d 1185, 1208 (10th Cir. 2015) (40% reduction of the lodestar amount when plaintiff's discrimination claims are dismissed on summary judgment and retaliation claims prevail at trial).

The Court further finds that an upward adjustment based on novelty, complexity, or hardship is unwarranted. Accordingly, the Court **AWARDS** $130,756.86 in attorney's fees.

### B. Pre-Judgment Interest

Dr. Katz seeks pre-judgment interest on both his past compensatory damages award[1] and his back pay award. Such is provided for in a case like this. *Thomas v. Texas Dep't of Criminal Justice,* 297 F.3d 361, 372 (5th Cir. 2002). The Court finds that the interest began accruing for both sums on January 2, 2019, *see* ECF No. 147 at 10, when Katz was constructively discharged and no longer being paid. *See Thomas*, 297 F.3d at 372 ("District courts generally should calculate interest on back pay and past damages based on the date of the adverse employment action.").

As for the rate, "it is within the discretion of the district court to select an equitable rate of prejudgment interest." *Hansen v. Cont'l Ins. Co.,* 940 F.2d 971, 984 (5th Cir. 1991). And while not prescribed, the Court finds that the federal interest rate of 4.2%, *see* ECF No. 144 at 10 (citing the Federal Reserve), is equitable and appropriate here. *See Raspanti v. Caldera*, 34 Fed. Appx. 151 (5th Cir. 2002) (allowing "the imposition of the federal rate of interest" … "in calculating prejudgment interest" … "in Title VII cases.").

### C. Post-Judgment Interest

Dr. Katz requests, and the Army does not oppose, post-judgment interest under 28 U.S.C. § 1961 ("§ 1961"). Under § 1961, interest is allowed on a money judgment

---

[1] Of course, the compensatory damages award only flows from Title VII, and not the ADEA, so it is solely attributable to the same, and susceptible to interest as such.

11

in a civil case recovered in a federal district court. § 1961(a). Moreover, the interest is computed daily to the date of payment and compounded annually. *See* § 1961(b). A court has discretion to impose a post-judgment interest award to make a plaintiff whole. *Williams v. Trader Pub. Co.,* 218 F.3d 481, 488 (5th Cir. 2000). Accordingly, a court may impose the federal rate of interest but is not bound to do so. *See id.* (finding that a district court's imposition of a higher rate than the federal rate to make a plaintiff whole in a Title VII case was not clear error). The Court finds the relevant federal interest rate, 4.2%, is appropriate to make Dr. Katz whole and thus awards him the same for post-judgment interest.

**D. Costs**

Dr. Katz also moves for costs. *See* ECF No. 137. An award of costs is a matter of the district court's discretion. *See Mota v. Univ. of Tex. Houston Health Sci. Ctr.*, 261 F.3d 512, 529 (5th Cir. 2001). In connection with his Title VII claim, plaintiff may recover costs pursuant to § 2000e-5(k). Such costs "include reasonable out-of-pocket expenses incurred by the attorney which are normally charged to a fee-paying client, in the course of providing legal services, such as postage, photocopying, paralegal services, long distance telephone charges, and travel costs." *See id.* (citation modified). To be reasonable, such costs must not be "extravagant or unnecessary." *Curtis v. Bill Hanna Ford, Inc.*, 822 F.2d 549, 553 (5th Cir. 1987). After careful review, the Court finds that Dr. Katz's costs, including travel, transcription,[2] and

---

[2] Even for video depositions, because "§ 1920 permits the recovery of the costs for both printed deposition transcripts and videotaped depositions if they are necessarily obtained for use in the case." *Cox v. Mignon Faget, Ltd.*, CV 24-1068, 2025 WL 2022669, at *12 (E.D. La. July 18, 2025).

12

service of process,[3] are reasonable, and are neither extravagant nor unnecessary. *See* ECF No. 137, 137-1, and 137-2.

### III. CONCLUSION

For the reasons set forth above,

**IT IS ORDERED** that the Motion for Attorney's Fees and Interest (ECF No. 133) is **GRANTED**.

**IT IS FURTHER ORDERED** that Dr. Katz be awarded attorney's fees in the amount of $130,756.86.

**IT IS FURTHER ORDERED** that Dr. Katz be awarded pre-judgment interest beginning January 2, 2019, at a rate of 4.2%, the prevailing federal interest rate at the time of judgment.

**IT IS FURTHER ORDERED** that Dr. Katz be awarded post-judgment interest accruing beginning the date of judgment at a rate of 4.2%, the prevailing federal interest rate at the time of judgment.

**IT IS FURTHER ORDERED** that Dr. Katz's Bill of Costs (ECF No. 137) be deemed reasonable and adopted by the Court. Accordingly, Dr. Katz is further awarded $31,443.57 in costs.

**MONROE, LOUISIANA**, this 13th day of August, 2025.

_____
Terry A. Doughty
United States District Judge

---

[3] *See Howell v. Town of Ball,* 2018 WL 580055 (W.D. La. Jan. 26, 2018).